IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-01325-CMA-SKC

ASPEN CORPORATIONS, INC., a Delaware corporation *d/b/a* Aspen Media,

    Plaintiff,

v.

SCOTT GORMAN, and
EDJSOURCE, LLC, a Florida limited liability company,

    Defendants.

---

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE**
_____

    This matter is before the Court on Defendants Scott Gorman's and EDJSource, LLC's (collectively, "Defendants") Motion to Dismiss First Amended Complaint or in the Alternative Transfer Venue to the Southern District of Florida (the "Motion"). (Doc. # 23). The Court has reviewed the Motion and related filings, as well as the applicable law. For the reasons described herein, the Court grants in part Defendants' Motion and transfers this action to the United States District Court for the Southern District of Florida.

**I.**    **BACKGROUND**

    This dispute arises from an employment relationship between Plaintiff Aspen Corporation, Inc. and Defendant Gorman. (Doc. # 19 at 1.)

Plaintiff purports to be a Delaware corporation "with its principal place of business at . . . Lafayette, Colorado." (*Id.* at 2.) Plaintiff engages in business process outsourcing ("BPO") and marketing and research for business-to-business and business-to-customer services. (*Id.*) It maintains three call centers: "its headquarters in Lafayette Colorado; Nashville, Tennessee; and India." (*Id.* at 5.)

Defendant Gorman is a resident of Florida. (*Id.* at 2.)

In October 2016, Plaintiff purchased assets of two companies owned in part and "controlled" by Defendant Gorman. (*Id.* at 3.)

Immediately following Plaintiff's asset purchases from Gorman's two companies, Plaintiff and Gorman executed an Employment Agreement pursuant to which Gorman was to become the CEO of Plaintiff for at least twelve months. (*Id.* at 4–5; Doc. # 19-1.) The Employment Agreement contained nondisclosure, non-competition, and non-solicitation provisions:

> 1. (b) <u>Devotion to Duties</u>.  While you are employed, you will use your best efforts, skills and abilities to perform all duties assigned to you and to devote your full business time and energies to the business and affairs of the Company [Plaintiff].  While you are employed, you will not undertake any other employment from any person or entity without the prior written consent of the Company.
> . . .
> 5.      <u>Non-Competition; Non-Solicitation</u>.  During the period in which you are employed hereunder and for a period of two years following the termination of your employment . . . you will not, without the prior written consent of the Company for yourself or on behalf of any other person or entity, directly or indirectly, own, manage, operate or control, or be concerned, connected or employed by, or otherwise associate in any manner with, any business which is competitive with the business of the Company within a 50 mile radius of any of the current or future locations . . . ; or either individually or on behalf of or through any third party, directly or indirectly, solicit, or attempt to solicit, for the purpose of competing with the

2

> Company, any customers or prospective customer of the Company, or any employee of the Company.
> . . .
> 6.      Protected Information.  You will at all times . . . maintain in confidence and will not, without the prior written consent of the Company, use, except in the course of performance of your duties for the Company, disclose or give to others any Confidential Information.

(Doc. # 19-1 at 2–4.)  Plaintiff alleges that based on this Employment Agreement, it "expended time and resources putting [Defendant Gorman] in position as its CEO, Vice President, Secretary and Treasurer" and "continually updated" Defendant Gorman "on products, suppliers, pricing, profit margins, and customer needs related to all of [its] business."  (Doc. # 19 at 5.)  During his employ, Defendant Gorman "operated remotely from Florida" but visited Colorado at least four times in connection with his employment.  (*Id.*; Doc. # 23-1 at 2.)

On April 1, 2017, Plaintiff and Defendant Gorman executed an Addendum to the Employment Agreement providing, in relevant part:

> 3.      Devotion to Duties.  The Company will recognize and allow [Defendant Gorman], for the remainder of the Agreement, to entertain conducting paid services to other organizations and not have to be responsible for Devotion of Duties as specified in Section 1 (d) in the Employment Agreement "Devotion to Duties".  The Executive will give priority to his duties within the Employment Agreement above those he may conduct with outside parties.

(Doc. # 19 at 6; Doc. # 19-2.)  Plaintiff states that the Addendum did not give Defendant Gorman "permission to set up a competitor or to usurp [its] corporate opportunities."  (Doc. # 19 at 6.)  Rather, in its view, Defendant "Gorman deceived [Plaintiff] into believing that he was going to look at opportunities that did not compete with Aspen."  (*Id.*)

3

Plaintiff alleges that on or about May 11, 2017, Defendant EDJSource was incorporated in Cooper City, Florida, and has since been "in the business of at least BPO, and possibly more" and "has a BPO call center."  (Doc. # 19 at 5–6.)  According to Plaintiff, Defendant Gorman has been crucial to Defendant EDJSource's incorporation and business.  (*Id.*)  It alleges that "[o]ne of the Managing Members of EDJSource is Gorman Consulting Group, Inc." and that Defendant Gorman is the President and CEO of the Gorman Consulting Group, with his wife serving as Treasurer.  (*Id.* at 6.)  Plaintiff observes that the Gorman and the Gorman Consulting Group maintain the same address and that this address, in addition to Defendant EDJSource's address, are "within a 50-mile radius of the Florida address [Defendant] Gorman used while employed as an Officer of [Plaintiff] and as the mailing address for [Plaintiff] on corporate filings."  (*Id.*)

Plaintiff asserts that it "has discovered that [Defendants] Gorman and EDJSource were involved in soliciting a relationship with a [Plaintiff] BPO business developer to do BPO business and call center/collections business with a prospective BPO/collections customer of [Plaintiff]."  (*Id.*)  Plaintiff alleges that in August 2017, while Defendant Gorman was still an officer of Plaintiff, Defendants "did BPO business for for [sic] this prospective CPO/collections client."  (*Id.*)  It notes that Defendant Gorman never presented this opportunity to Plaintiff and that it "never consented to [Defendant] Gorman competing with [it] or soliciting an actual or prospective relationship of [it]."  (*Id.*)

4

On May 30, 2017, Plaintiff terminated Defendant Gorman's Employment Agreement "for Gross Misconduct and violations of the Employment Agreement."[1] (*Id.* at 7.) Plaintiff also removed Defendant Gorman from all officer roles in its company. (*Id.*)

Plaintiff initiated this action against Defendants on May 30, 2018, *see* (Doc. # 1), and asserts fourteen claims in its First Amended Complaint: (A) breach of contract; (B) breach of fiduciary duties; (C) misappropriation of trade secrets under the Colorado Uniform Trade Secrets Act ("CUTSA"), Colo. Rev. Stat. §§ 7-74-101, *et seq.*; (D) intentional interference with prospective business relationships; (E) unjust enrichment; (F) civil theft pursuant to Colorado law, Colo. Rev. Stat. § 18-4-401; (G) civil conspiracy "under Colorado and New York law;" (H) intentional interference with contractual relations; (I) exemplary damages pursuant to Colorado law, Colo. Rev. Stat. § 13-21-102; (J) violation of the federal Defendant Trade Secrets Act, 18 U.S.C. § 1836(b); (K) misappropriation; (L) tortious interference with business relationships; (M) conversion; and (N) unfair competition. (Doc. # 19 at 7–13.)

Defendants filed the Motion to Dismiss or Transfer Venue on August 21, 2018. (Doc. # 23.) They request that the Court dismiss the Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) or, alternatively, transfer venue pursuant to 28 U.S.C. § 1404. (*Id.* at 1.)

---

[1] Plaintiff states that in August 2017, Defendant Gorman was "still an Officer of [Plaintiff]", (Doc. # 19 at 6), but later asserts that it terminated Defendant Gorman and removed him from his officer roles in May 2017, (*id.* at 7), some three months earlier. Plaintiff does not attempt to explain the inconsistency in these dates.

Plaintiff responded in opposition to the Motion on October 2, 2018 (Doc. # 31), to which Defendants replied on October 30, 2018 (Doc. # 45).

## II.     DISCUSSION

Defendants move to dismiss the action in its entirety on three grounds: (1) pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction; (2) pursuant to Rule 12(b)(3) for improper venue; and (3) pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  (Doc. # 23 at 1.)  Alternatively, they request that the Court transfer the action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).  (*Id.* at 6–7.)

The Court begins with Defendants' arguments that Plaintiff has not satisfied its burden to establish proper venue and that Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(3).  *See* (Doc. # 23 at 5–8).  "[T]here is no mandatory 'sequencing of jurisdictional issues.'"  *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).  The Supreme Court has explained:

> The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum.  On the other hand, neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties.  Accordingly, when there is a sound prudential justification for doing so, we conclude that a court may reverse the normal order of considering personal jurisdiction and venue.

*Leroy v. Great W. United Corp.*, 443 U.D. 173, 180 (1979) (internal citations omitted).

Such a justification for considering venue before personal jurisdiction exists in this matter. It is likely that, if the Court began by considering personal jurisdiction, it would determine that Plaintiff has not demonstrated that Defendants have had sufficient minimum contacts with the District of Colorado to establish personal jurisdiction, and the Court would necessarily dismiss the action without prejudice pursuant to Rule 12(b)(2). Plaintiff would likely then re-file this action in the Southern District of Florida, where the court's personal jurisdiction over Defendants is indisputable. In light of the Court's conclusion that venue is improper in the District of Colorado and its transfer of this action to the Southern District of Florida, explained below, the Court believes it is more efficient to begin by simply transferring the litigation to the Southern District of Florida, rather than dismissing it and effectively requiring Plaintiff to re-file in the Southern District of Florida or another federal judicial district. As a prudential matter, it is the Court's practice to seek efficient outcomes. The Court therefore finds it appropriate to pretermit the matter of personal jurisdiction because it is clear that venue is improper. *See Leroy*, 443 U.S. at 180–81 (where determining personal jurisdiction would require the Court to answer "novel constitutional questions," "find[ing] it appropriate to pretermit the constitutional issue in this case because it is so clear that venue was improper").

**A.    PRINCIPLES OF VENUE**

It is the plaintiff's burden to establish that venue is proper in the district in which it seeks relief, and once venue is challenged, the plaintiff must "present[] specific facts to support the allegations." *Gwynn v. TransCor America, Inc.*, 26 F. Supp. 2d 1256, 1261 (D. Colo. 1998).

> The federal venue statute provides that a civil action may be brought in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) **a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred**, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b) (emphasis added). Plaintiff in the action presently before the Court asserts that venue is proper under Section 1391(b)(2) "in that a substantial part of the events or omissions giving rise to the claims asserted, as well as the harm to [Plaintiff], occurred in this District." (Doc. # 19 at 3.)

The Court of Appeals for the Tenth Circuit conducts a two-part analysis when reviewing challenges to venue under Section 1391(b)(2). *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010). First, the Court "examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims." *Id.* Second, it "determine[s] whether substantial 'events material to those claims occurred' in the forum district." *Id.* (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d. Cir. 2005)). "The substantiality requirement is satisfied upon a showing of 'acts or omissions that have a close nexus' to the alleged claims.'" *Id.* (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003)). *See also DP Precise, LLC v. Phoenix Ins. Co.*, No. 12-cv-03001-REB-CBS, 2013 WL 2378561, at *2 (D. Colo. May 20, 2013) ("The forum activities must have been events significant to the plaintiff's

8

claims"). However, "venue is not limited to the district with the most substantial events or omissions." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1165. "'A substantial part of the events' may have occurred in more than one district." *Etienne v. Wolverine Tube, Inc.*, 12 F. Supp. 2d 1173, 1180 (D. Kan. 1998) (quoting *Setco Enters. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994)). Section 1391(b)(2) "contemplates that venue can be appropriate in more than one district . . . and permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1166 (quoting *Gulf Ins. Co.*, 417 F.3d at 356).

Moreover, "unless the balance is strongly in favor of the [defendant], the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). "Nevertheless, courts will 'accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'" *Sanchez v. Miller*, No. 15-cv-01615, 2016 WL 675816, at *3 (D. Colo. Feb. 19, 2016) (quoting *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168).

Finally, in reviewing a defendant's Rule 12(b)(3) motion to dismiss for improper venue, the Court may examine facts outside of the complaint and must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Hancock v. Am. Tel & Tel. Co., Inc.*, 701 F.3d 1248, 1260–61 (10th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1352, 324 (2004)). "Specifically, the Court must accept the well-pleaded allegations of the complaint as true to the extent that they are uncontested by the defendant's affidavits."

9

*Karl W. Schmidt & Assoc., Inc. v. Action Envtl. Sol., LLC*, No. 14-cv-00907-RBJ, 2014 WL 6617095, at *2 (D. Colo. Nov. 21, 2014) (citing *Hancock*, 701 F.3d at 1260–61). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (quoting *H&H Transformer, Inc. v. Battelle Energy All., L.L.C.*, No. 09-cv-00442-WYD-BNB, 2009 WL 3530370, at *3 (D. Colo. Oct. 23, 2009)).

**B.   ANALYSIS**

Defendants argue that venue is improper in this District because in Plaintiff's breach of contract and tort claims, "Plaintiff makes no allegation of 'substantial events' material to its claims occurring in Colorado." (Doc. # 23 at 6.) Rather, in Defendants' view, "Plaintiff alleges only that it suffered harm in Colorado." (*Id.*) Harm alone, Defendants continue, "is not enough to establish venue." (*Id.*) (citing *Sanchez*, 2016 WL 675816 at *3–4). The Court agrees that venue does not properly lay in this District.

At the first step of the Tenth Circuit's two-part Section 1391(b)(2) analysis, examining the nature of Plaintiff's claims and the acts or omissions underlying those claims, *see Emp'rs Mut. Cas. Co.*, 618 F.3d at 1166, the Court notes that Plaintiff's claims center on the Employment Agreement that Defendant Gorman allegedly breached and on Defendant Gorman's subsequent dealings with Defendant EDJSource. *See generally* (Doc. # 19.) The acts and omissions underlying Plaintiff's claims took place primarily in Florida, and, to a lesser degree, in Colorado. Defendant Gorman "operated remotely from Florida" and used an address in Florida as Plaintiff's

mailing address on corporate filings when in Plaintiff's employ. (Doc. # 19 at 5–6.) Defendant Gorman's consulting firm helped to incorporate Defendant EDJSource in Florida; Defendant EDJSource conducts business in Florida. (*Id.*) It is Defendant Gorman's alleged acts of sharing Plaintiff's confidential information and trade secrets with Defendant EDJSource that ultimately give rise of Plaintiff's claims. As to Colorado, Plaintiff alleges that its principal place of business is in Colorado, (*id.* at 2.), and that its server, from which Defendant Gorman allegedly misappropriated trade secrets and other confidential, proprietary information, is located in Colorado, (Doc. # 31 at 9). Defendant Gorman also concedes that he took four business trips to Colorado during his employment with Plaintiff. (Doc. # 23 at 4.)

At the second step of the two-part inquiry, the Court must determine whether substantial events material to Plaintiff's claims occurred in Colorado. *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1166. Even considering Plaintiff's allegations in its favor, the Court concludes that Plaintiff has **not** made a prima facie showing that substantial events material to its claims occurred in this District. Plaintiff's primary contentions regarding substantial events that occurred in Colorado are that it "provided [confidential information and trade secrets] to [Defendant] Gorman from its server in Colorado" and that Defendant "Gorman's improper act in taking that information for an improper use occurred through his accessing [Plaintiff's] server located in Colorado." (Doc. # 31 at 9.) Plaintiff does not allege that Defendant Gorman was physically in Colorado when he accessed the server; it concedes that Defendant Gorman worked remotely from Florida. The location of Plaintiff's server itself is not significant to Plaintiff's claims, *see DP*

*Precise, LLC*, 2013 WL 2378561 at *2; stated differently, Plaintiff has not demonstrated a close nexus between Plaintiff's alleged actions in his Florida home office and the District of Colorado, *see Emp'rs Mut. Cas. Co.*, 618 F.3d at 1166.

Moreover, Plaintiff's assertion that it "suffered harm in Colorado" does not make venue in this District proper. Though where a plaintiff suffered the alleged harm may be a relevant factor "when other events giving rise to the claim took place in the same district," *Gwynn*, 26 F. Supp. 2d at 1262, "the suffering of economic harm within a district is not sufficient without more to warrant transactional venue in that district," *Kahn v. Davis*, No. 10-cv-01715, 2011 WL 4102328, at *2 (D. Colo. Sept. 14, 2011) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3806.1 (2010)).

For these reasons, Plaintiff fails to satisfy its burden to demonstrate that venue is proper in the District of Colorado. It has not convinced the Court that Colorado "has the type of significant connection to the gravamen of this lawsuit as would justify the usual deference to [P]laintiff's choice of forum." *See Sanchez*, 2016 WL 675816 at *4.

**C.  TRANSFER PURSUANT TO 28 U.S.C. §1406**

In the matter presently before the Court, Defendants move the Court to dismiss Plaintiff's action pursuant to Rule 12(b)(3) for improper venue. (Doc. # 23 at 6.) However, they seek "as alternative relief, transfer to the [Southern District of Florida]."[2] (*Id.* at 6–8.)

---

[2] Defendants request transfer "under 28 U.S.C. § 1404(a)." (Doc. # 23 at 6–8.) Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The Court finds that Section 1406(a), which similarly allows the Court to transfer an action to another district, is more

When venue in the district in which a suit is filed is found to be improper, Section 1406(a) provides that the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a); see *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 n.3 (10th Cir. 2001). The Tenth Circuit has "interpreted the phrase 'if it is in the interest of justice' to grant the district court discretion in making a decision to transfer an action or instead to dismiss the action without prejudice." *Trujillo v. Williams*, 465 F.3d 1210, 1222–23 (10th Cir. 2006). "The 'interest of justice' is an amorphous standard, left largely undefined by the courts.'" Whiting v. Hogan, 855 F. Supp. 2d 1266, 1290 (D.N.M. 2012) (quoting 17 J. Moore, Moore's Federal Practice, § 111.34, at 111–65 (3d ed. 2011). Two factors that courts have commonly considered" in determining whether to a transfer pursuant to Section 1406(a) is in the interest of justice "are (1) the convenience of parties and witnesses), and (2) where the relevant events took place." *Aluminal Indus., Inc. v. Newtown Commercial Assoc.*, 89 F.R.D. 326, 330 (S.D.N.Y. 1980) (collecting cases). Ordinarily, "transfer will be in the interest of justice because normal dismissal of an action that could be brought elsewhere is 'time consuming and justice defeating.'" 17 J. Moore, Moore's Federal Practice, § 111.34 at 111–65 (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)).

The Court transfers this action to the United States District Court for the Southern District of Florida pursuant to Section 1406(a) because doing so is in the interest of

---

appropriate for the matter at hand, as it is specifically designed for cases in which venue is improper. The Court therefore conducts its analysis in the framework of Section 1406(a).

13

justice. It is in the interest of justice to transfer the suit because: (1) Plaintiff's arguments in support of venue in the District Court are not so patently improper as to justify outright dismissal; (2) all Defendants reside in the Southern District of Florida; (3) a substantial part of the events underlying Plaintiff's occurred in the Southern District of Florida; (4) it is "justice defeating" to dismiss an action that could be brought elsewhere, *Goldlawr, Inc.*, 369 U.S. at 466; and (5) Plaintiff's objections do not contest that the Southern District of Florida has jurisdiction over its claims and that venue is proper in that District, *see* (Doc. # 31 at 9–10).

Having concluded that transfer pursuant to Section 1406(a) is warranted, the Court declines to consider Defendants' arguments to dismiss pursuant to Rules 12(b)(2) and 12(b)(6).

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Defendants' Motion to Dismiss (Doc. # 23) to the extent that it seeks transfer of this action to the United States District Court for the Southern District of Florida. It is

FURTHER ORDERED that this action is transferred to the United States District Court for the Southern District of Florida.

DATED: March 20, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge